UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARTIN WOODBURY, | |
| Plaintiff, | |
| v. | Civil Action No. 21-3384 (DLF) |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF POINTS AND AUTHOROTIES IN SUPPORT THEREOF**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 1

    A.    FBI's Response ....................................................................................... 2

    B.    ATF's Response ...................................................................................... 4

LEGAL STANDARD .................................................................................................... 6

ARGUMENT .................................................................................................................. 6

    A.    The Agencies Adequately Searched Their Databases Using Methods Reasonably Expected to Yield the Information Woodbury Requested. ........................................ 7

        1.    The FBI's Searches Were Adequate. ................................................. 8

        2.    ATF's Searches Were Adequate. .................................................... 10

    B.    The Agencies Appropriately Withheld Non-Segregable Information.................... 11

        1.    The FBI Appropriately Withheld Documents Under Exemption 3 To Protect Intelligence Sources and Methods. .................................................. 11

        2.    ATF's Withholding of Deliberative Information Under Exemption 5 Was Proper. .................................................................................................. 13

        3.    The Agencies Appropriately Withheld Information Pursuant to Exemptions 6 and 7(C) to Protect the Personal Information of Third Parties. ............................. 14

        4.    The Agencies Appropriately Withheld Information Pursuant to Exemption 7(E) to Protect Law Enforcement Techniques and Procedures. .............................. 22

    C.    The Agencies Have Only Withheld Non-Segregable Information.......................... 25

CONCLUSION ............................................................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Just.*,
    655 F.3d 1 (D.C. Cir. 2011) .......................................................................... 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................... 6

*Bartko v. Dep't of Justice*,
    898 F.3d 51 (D.C. Cir. 2018) ...................................................... 18, 19, 20, 21

*Blackwell v. FBI*,
    646 F.3d 37 (D.C. Cir. 2011) ................................................................. 23, 25

*Boyd v. Exec. Office of U.S. Att'ys*,
    161 F. Supp. 3d 1 (D.D.C. 2015) ............................................................... 16

*Brayton v. Off. of the U.S. Trade Representative*,
    641 F.3d 521 (D.C. Cir. 2011) .................................................................... 6

*Callimachi v. FBI*,
    583 F. Supp. 3d 70 (D.D.C. 2022) ............................................................ 24

*Center for Nat'l Sec. Stud. v. Dep't of Justice*,
    331 F.3d 918 (D.C. Cir. 2003) ................................................................... 13

*CIA v. Sims*,
    471 U.S. 159 (1985) ................................................................................... 12

*Citizens for Resp. and Ethics in Wash. v. Dep't of Just.*,
    746 F.3d 1082 (D.C. Cir. 2014) ................................................................ 11

*Citizens for Resp. and Ethics in Wash. v. Dep't of Justice*,
    160 F. Supp. 3d 226 (D.D.C 2016) ............................................................ 12

*Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health and Hum. Servs.*,
    554 F.3d 1046 (D.C. Cir. 2009) ................................................................ 15

*Dep't of Air Force v. Rose*,
    425 U.S. 352, 361 (1976) ........................................................................ 7, 22

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ...................................................................................... 13

*Dep't of Just. v. Reporters Comm. for Freedom of Press*,
   489 U.S. 749 (1989) ................................................................................... 15, 16, 22

*Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) ................................................................................... 14

*DiBacco v. U.S. Army*,
   795 F.3d 178 (D.C. Cir. 2015) ................................................................... 7

*FBI v. Abramson*,
   456 U.S. 615 (1982) ................................................................................... 7

*Formaldehyde Inst. v. Dep't of Health and Hum. Servs.*,
   889 F.2d 1118 (D.C. Cir. 1989) ................................................................. 13

*Iturralde v. Comptroller of Currency*,
   315 F.3d 311 (D.C. Cir. 2003) ................................................................... 8

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ................................................................................... 7

*Jud. Watch, Inc. v. FDA*,
   449 F.3d 141 (D.C. Cir. 2006) ................................................................... 13

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ................................................................... 12

*Lepelletier v. Fed. Deposit Ins. Corp.*,
   164 F.3d 37 (D.C. Cir. 1999) ..................................................................... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................... 6

*Montgomery v. IRS*,
   40 F.4th 702 (D.C. Cir. 2022) ................................................................... 8

*Multi Ag Media LLC v. Dep't of Agric.*,
   515 F.3d 1224 (D.C. Cir. 2008) ................................................................. 14

*Maydak v. Dep't of Just.*,
   218 F.3d 760 (D.C. Cir. 2000) ................................................................... 25

*Nat'l Archives and Records Admin. v. Favish*,
   541 U.S. 157 (2004) ................................................................................... 21, 22

*Nat'l Ass'n of Home Bldgs v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ................................................................ 15

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) .............................................................. 15

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) .................................................................. 8

*Peralta v. U.S. Att'ys Off.*,
    136 F.3d 169 (D.C. Cir. 1998) ................................................................ 1

*Pub. Citizen, Inc. v. Office of Mgmt. and Budget*,
    598 F.3d 865 (D.C. Cir. 2010) .............................................................. 13

*Reporters Comm. for Freedom of Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ................................................................ 11

*Reporters Comm. for Freedom of Press v. FBI*,
    877 F.3d 399 (D.C. Cir. 2017) ................................................................ 8

*Roth v. Dep't of Just.*,
    642 F.3d 1161 (D.C. Cir. 2011) ................................................. 15, 17, 21

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................... 8, 16, 26

*Salas v. Off. of Inspector Gen.*,
    577 F. Supp. 2d 105 (D.D.C. 2008) ...................................................... 21

*\*Schrecker v. Dep't of Just.*,
    349 F.3d 657 (D.C. Cir. 2003) ................................... 16, 18, 20, 21, 22, 26

*Smith v. CIA*,
    246 F. Supp. 3d 117 (D.D.C. 2017) ...................................................... 14

*Toensing v. Dep't of Just.*,
    890 F. Supp. 2d 121 (D.D.C. 2012) ........................................................ 7

*\*Watkins Law & Advocacy, PLLC v. Dep't of Just.*,
    78 F.4th 436 (D.C. Cir. 2023) ........................................................... 8, 10

*Whitaker v. CIA*,
    64 F. Supp. 3d 55 (D.D.C. 2014) .......................................................... 12

**Statutes**

5 U.S.C. § 552(a)(8)(A)(i)(II) ............................................................................... 12

5 U.S.C. § 552(a)(4)(B) ............................................................................................ 1

5 U.S.C. § 552(b) ...................................................................................................... 7

5 U.S.C. § 552(b)(3) ......................................................................................... 3, 4, 11

5 U.S.C. § 552(b)(5) .............................................................................................. 13

5 U.S.C. § 552(b)(6) ......................................................................................... 3, 4, 14

5 U.S.C. § 552(b)(7)(C) ..................................................................................... 3, 4, 15

5 U.S.C. § 552(b)(7)(E) ..................................................................................... 3, 4, 22

5 U.S.C. § 552(f)(1) .................................................................................................. 1

5 U.S.C. § 552a(b)(2) ............................................................................................. 25

50 U.S.C. § 3024(i)(1) ...................................................................................... 11, 12

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................ 6

**Other Authorities**

*Police: Former Soldier Stored Anti-Tank Round on Roof*, ARMYTIMES (Dec. 11, 2015)......... 2

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, Defendant the Department of Justice (the "Department")[1] moves this Court for summary judgment.  This case involves Plaintiff Martin Woodbury's ("Woodbury") Freedom of Information Act ("FOIA") request to two of the Department's components, the Federal Bureau of Investigation ("FBI") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF," and together with the FBI, the "Agencies").  Woodbury seeks from the Agencies records pertaining to their criminal investigation of Tracy Worwood's ("Worwood") possession of an anti-tank munition.  Critically, all records Woodbury seeks were compiled for a law enforcement purpose and concern Worwood—a third-party to this litigation—who has not provided consent for the release of his records.  Upon receipt of Woodbury's requests, the Agencies appropriately searched for responsive records.  After diligent, line-by-line review of the responsive documents, the Agencies released to Woodbury all reasonably segregable records, withholding only those records or portions thereof that properly are exempt from release under FOIA Exemptions 3, 5, 6, 7(C), and 7(E).  For these reasons, the Department requests that the Court grant its motion and enter judgment in its favor.

## BACKGROUND

According to the FOIA requests Woodbury submitted to the Agencies, Woodbury, Jessica Weber ("Weber"), and Tristan Worwood were witnesses in the Agencies' 2015-2016 criminal investigation into Worwood's possession of military ordinance in proximity of an elementary school in East Tacoma, Washington.  Exhibit ("Ex.") 3 at 2, ATF FOIA Request (Oct. 28, 2020).[2]

---

[1]    The proper defendant in this case is the Department of Justice, but governing precedent requires no alteration of the named defendants, which are components of the Department of Justice. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552(f)(1); *see also Peralta v. U.S. Att'ys Off.*, 136 F.3d 169, 173–74 (D.C. Cir. 1998).

[2]    All exhibit citations are to the ECF-generated page numbers in the header of the documents.

After an investigation by the Agencies and local police, Worwood was charged in Pierce County

Superior Court. *See Police: Former Soldier Stored Anti-Tank Round on Roof*, ARMYTIMES

(Dec. 11, 2015), available at https://www.armytimes.com/news/your-army/2015/12/11/police-

former-soldier-stored-anti-tank-round-on-roof/ (last visited May 29, 2024).  In October 2020,

Woodbury sent the Agencies identical FOIA requests focused on:

> All records in the possession or control of the ATF that discuss or describe the criminal investigation and / or the governmental response of law enforcement in addressing the 2015 - 2016 criminal matter occurring in East Tacoma, Washington (Pierce County), involving an individual identified as Tracy Worwood's possession of a military explosive in close proximity to a local elementary school. See attached Seattle Times and News Tribune news articles describing this incident. My client is seeking all agency responsive records for the above subject matter created or received August 1, 2015 to the date of this record request.

Ex. 3 at 2-4, ATF FOIA Request (Oct. 28, 2020); Ex. 4 at 3-6, FBI FOIA Request (Oct. 28, 2020).

## I.    FBI's Response

For administrative tracking purposes, the FBI separated Plaintiff's FOIA request into three

different requests, assigning FBI FOIPA Request Number 1481654-0 to the portion of Plaintiff's

request seeking information on Tracy Worwood in relation to the 2015/2016 East Tacoma crime,

FOIPA Request Number 1480714-0 to a portion of Woodbury's request seeking information on

himself, and FOIPA Request Number 1480256-0 to a portion of Woodbury's request seeking

information on Jessica Dawn Weber.  Ex. 2, Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 6.

Request 1480256-0 is not at issue in this litigation.

With respect to request 1481654, on November 24, 2020, the FBI acknowledged the

request.  Ex. 4 at 15-16, November 2020 Response (Nov. 24, 2020).  The FBI informed Woodbury

that it closed the request because Woodbury "requested records on one or more third party

individuals[.]"  *Id.*  Invoking Exemptions 6 and 7(C), the FBI asserted that it "will neither confirm

nor deny the existence of such records" because "[t]he mere acknowledgement of the existence of

FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* Providing a *Glomar* response in this and similar circumstances is the FBI's usual practice, including in instances when the FBI does not possess responsive records because "merely acknowledging the existence or non-existence of records responsive to Plaintiff's requests would trigger harm under FOIA Exemptions 6 and 7(C)." Ex. 2, Seidel Decl. ¶¶ 63, 64.

The FBI processed the remainder of Woodbury's request. Based on the information he provided, the FBI searched for main and reference entries in its Sentinel and ACS indices via Sentinel's search function. Specifically, the FBI searched for (1) "Woodbury, Martin" and "Martin Woodbury," employing a search cut-off date of February 24, 2022; and (2) "Tracy Worwood," employing a search cut-off date of August 7, 2022. *Id.* ¶ 24. In this manner, the FBI searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be expected to locate responsive records. *Id.* ¶ 25. These searches returned the eight pages processed in response to Woodbury's FOIA request. *Id.* ¶ 24.

On May 12, 2021, the FBI responded to Woodbury's request via letter, stating that it reviewed eight pages and released four pages in full or in part. *See id.* ¶ 9; Ex. 4 at 22-23, May 2021 Response (May 12, 2021). The letter explained that documents were redacted or withheld under Privacy Act Exemption (2), 5 U.S.C. § 552a(j)(2), and FOIA Exemptions 3, 6, 7(C), and 7(E). *See* Ex. 2, Seidel Decl. ¶ 9; Ex. 4 at 22, May 2021 Response.

By letter dated August 9, 2021, the Department's Office of Information Policy received Woodbury's administrative appeal challenging the application of FOIA Exemptions 3, 6, 7(C), and 7(E) and asserting that "the agency has failed to date to undertake an adequate search for responsive records in a manner reasonably calculated to locate all responsive records[.]" Ex. 2,

Seidel Decl. ¶ 10; Ex. 4 at 27, Admin. Appeal (Aug. 9, 2021).  The Department acknowledged receipt of Woodbury's appeal on August 25, 2021.  *See* Ex. 2, Seidel Decl. ¶ 11; Ex. 4 at 37, Acknowledgement of Appeal (Aug. 25, 2021).  Because Woodbury filed this case on Dec. 30, 2021, ECF No. 1, the Department informed Woodbury on March 4, 2022, that it would close the administrative appeal, which it did.  *See* Ex. 2, Seidel Decl. ¶ 13; Ex. 4 at 39, March 2022 Appeal Letter (Mar. 4, 2022).

On March 17, 2022, the FBI notified Woodbury that it reviewed its May 12, 2021, release and determined that it could release additional information.  Specifically, the FBI released five pages in full or in part.  The FBI asserted Privacy Act Exemption (j)(2) and FOIA Exemptions 3, 6, 7(C), and 7(E) as justifications for withholding the remaining information.  *See* Ex. 2, Seidel Decl. ¶ 14; Ex. 4 at 41-42, March 2022 Response (Mar. 17, 2022).

On December 6, 2022, the FBI notified Woodbury that it received from ATF a document for review and direct response to Woodbury.  The FBI determined that the document was not responsive to Woodbury's FOIA request and did not process the material for release.  *See* Ex. 2, Seidel Decl. ¶ 15; Ex. 4 at 46, December 2022 Response (Dec. 6, 2022).

## II.    ATF's Response

ATF responded to Woodbury's FOIA request by letter, informing him that ATF was unable to disclose records responsive to his request because he did not provide documentation demonstrating his right to access the records of a third party ("ATF Initial Response").  *See* Ex. 1, Declaration of Hirsh Kravitz, Acting Chief, Information and Privacy Governance Division, Bureau of Alcohol, Tobacco, Firearms and Explosives ("Kravitz Decl.") ¶ 4; Ex. 3 at 14-15.  Woodbury administratively appealed, which appeal OIP denied.  *See* Ex. 1, Kravitz Decl. ¶¶ 5, 6; Ex. 3 at 16-17, 32-33.  On December 30, 2021, Woodbury filed this case.  Compl., ECF No. 1.

Following the initiation of this case, ATF searched for records responsive to Woodbury's FOIA request. *See* Ex. 1, Kravitz Decl. ¶ 8. ATF's search occurred in two parts. First, ATF searched its N-Force database, an online database housing records relating to ATF's criminal investigations. *Id*. ¶ 14. ATF queried the database using the search terms "Worwood" for last name and "Tracy" for first name; that search produced sixteen pages of investigative records. *Id*. Second, ATF's Seattle field division, which headed the subject investigation in East Tacoma, Washington, searched the N-Force database using Tracy Worwood's first and last name, as well as reviewing its physical case files. *Id*. ¶ 16. While the electronic search did not uncover any additional files, the physical case file contained seventeen pages the electronic searches had not yielded. *Id*. ATF concluded there were no other locations or databases likely to contain responsive records. *Id*. ¶ 17. In total, these searches yielded thirty-three pages of responsive documents. *Id*. ¶ 16. ATF produced these records to Woodbury on May 18, 2022, releasing sixteen pages in full and seventeen pages in part; ATF withheld third-party information pursuant to Exemptions 6 and 7(C) ("ATF's First Supplemental Final Response"). *See id*. ¶¶ 9, 16; Ex. 3 at 34-68.

In July 2022, Woodbury requested that ATF expand its FOIA search's scope to include communications between Woodbury and ATF employees related Woodbury's anonymous tip. Ex. 1, Kravitz Decl. ¶ 10. ATF agreed, and searched Woodbury's and Worwood's names in all emails between August 1, 2015, and October 28, 2022, in the "ATF Tips" email account and the email account for an employee responsible for monitoring the ATF Tips inbox. *Id*. ¶¶ 10, 18. On November 22, 2022, ATF provided a second release of documents, releasing 440 pages in full and seventy-seven pages in part ("ATF Second Supplemental Response"). *See id*. ¶ 11; Ex. 2 at 69-643, ATF Second Supplemental Response. ATF also informed Woodbury that fifty-three pages were withheld in full, two pages were duplicates, and twenty were referred to another federal

agency for direct response.  *See* Ex. 1, Kravitz Decl. ¶ 11; Ex. 3 at 69.  ATF explained that it withheld materials pursuant to Exemptions 5, 6, 7(C), and 7(E).  Ex. 3 at 69.

On July 12, 2023, ATF provided Woodbury a further response regarding twenty-seven pages, which were attachments to e-mail communications previously released to Woodbury in the ATF Second Supplemental Response ("ATF Third Supplemental Response").  *See* Ex. 1, Kravitz Decl. ¶ 13; Ex. 3, at 644, Notice of Referral to Another Agency.  ATF did not release these records to Woodbury, but notified him that ATF referred these pages to the Department of the Army and directed Woodbury to contact that agency regarding them.  *See* Ex. 1, Kravitz Decl. ¶ 13; Ex. 3, at 644, Notice of Referral to Another Agency.

## LEGAL STANDARD

"[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment is appropriate if the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  While the party seeking summary judgment must demonstrate the absence of a genuine issue of material fact, "the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (cleaned up).  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law."  *Id.* at 248.  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## ARGUMENT

Congress enacted the Freedom of Information Act to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny[.]"  *Dep't of Air Force v. Rose*,

425 U.S. 352, 361 (1976).  The statute generally requires the government to "make the records promptly available to any person" who makes "any request for records[.]"  5 U.S.C. § 552(a)(3).  While "the basic policy [is] disclosure, not secrecy[,]" Congress has recognized that "legitimate governmental and private interests could be harmed by release of certain types of information[.]"  *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  Thus, Congress vested the government with authority to withhold information falling within one of nine enumerated exemptions.  5 U.S.C. § 552(b).  "While those exemptions must be narrowly construed, they still must be given meaningful reach and application[.]"  *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015).  In this way, Congress created a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy."  *John Doe Agency v. John Doe Corp*., 493 U.S. 146, 152 (1989).

When a plaintiff challenges an agency's response to a FOIA request, the agency must show: (1) that it "conducted a search reasonably calculated to uncover all relevant documents," and (2) that "each document that falls within the class requested either has been produced or is wholly exempt from the Act's inspection requirements."  *Toensing v. Dep't of Just.*, 890 F. Supp. 2d 121, 131 (D.D.C. 2012) (cleaned up).

## I.    **The Agencies Adequately Searched Their Databases Using Methods Reasonably Expected to Yield the Information Woodbury Requested.**

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  While the agency "may not limit its search to only one record system if there are others that are likely to turn up the information requested[,]" the agency "need not search every record system[.]"  *Montgomery v. IRS*, 40 F.4th 702, 714 (D.C. Cir. 2022) (cleaned up).  "Rather, an

agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Watkins Law & Advocacy, PLLC v. Dep't of Just.*, 78 F.4th 436, 442-43 (D.C. Cir. 2023) (cleaned up). Further, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search[.]" *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The agency will meet its burden "by submitting a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (cleaned up). The Court affords agency declarations "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up).

### A.    The FBI's Searches Were Adequate.

The FBI's "declaration[] describe[s] with particularity the files that were searched, the manner in which they were searched, and the results of the search and show[s] that the agency made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested[.]" *Watkins Law & Advocacy*, 78 F.4th at 444 (internal quotation marks and citations omitted).

In response to Woodbury's FOIA request, "the FBI [] searched all locations and files reasonably likely to contain responsive records." Ex. 2, Seidel Decl. ¶ 25. Specifically, the FBI searched for main and reference entries in its Sentinel and ACS indices via Sentinel's search function. *Id*. ¶ 24. As Seidel explains, "[g]iven the comprehensive nature of the information contained" in "the FBI's Central Records System ("CRS")[,]" "the CRS is the FBI system of records where responsive records would reasonably be expected to be found. *Id*. ¶ 16. That is

because "[t]he CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions." *Id*. ¶ 17. "The CRS spans the entire FBI organization and encompasses the records of [FBI Headquarters], FBI field offices, and FBI legal attaché offices worldwide." *Id*. The CRS indices "function as the key to locating records within the enormous amount of information contained in the CRS." *Id*. ¶ 19. "A main index entry is created for each individual or non-individual (e.g., organization, event, or activity) that is the subject or focus of an investigation. Main subjects are identified in the case title of a file." *Id*. "A reference index entry is created for an individual or non-individual (e.g., organization, event, or activity) associated with an investigation, but who or which is not the main subject or focus of the investigation." *Id*. "FBI personnel access the general indices through Sentinel, the FBI's case management system." *Id*. ¶ 20. FBI personnel "rely on Sentinel to locate records and other types of documents to fulfill essential functions." *Id*. ¶ 21.

Regarding the search itself, Seidel explains that, "the FBI searched using the following terms: [1] 'Woodbury, Martin' and 'Martin Woodbury' employing a search cut-off date of February 24, 2022, and [2] 'Tracy Worwood' with a search cut-off date of August 7, 2022, which are the dates of the FBI's initial searches for records." *Id*. ¶ 24. Moreover, as Seidel explains, Woodbury "provided no information for the FBI to reasonably conclude that records responsive under the FOIA would reside outside the CRS" and there "is no indication from the CRS search efforts that responsive records would reside in any other FBI system or location." *Id*. ¶ 25. Beyond CRS, therefore, there is no other location that is "reasonably likely to contain responsive records." *Id*. The D.C. Circuit has found the FBI's search adequate in similar circumstances, where the

declaration described with "particularity" the location and manner of the search. *See, e.g., Watkins Law & Advocacy*, 78 F.4th at 444. The FBI's search, therefore, was adequate to find documents responsive to Woodbury's FOIA request seeking records from a 2015-2016 criminal investigation.

**B.      ATF's Searches Were Adequate.**

ATF's declaration likewise describes with particularity the files searched, the manner in which they were searched, and the search's results, and shows that the agency undertook a good faith effort to search for the requested records, using methods reasonably likely to produce the requested information. *See id.*

In response to Woodbury's FOIA request, ATF conducted three searches of the only locations or databases likely to contain responsive records. Ex. 1, Kravitz Decl. ¶ 17. First, ATF twice searched its N-Force database, which houses records related to ATF criminal investigations. *Id*. ¶¶ 14-16. ATF searched the database electronically, using the search terms "Worwood" for last name and "Tracy" for first name. *Id*. ¶ 14. As Kravitz explains, "ATF did not search N-Force for the witness[es'] names; such searches would have been unlikely to yield additional responsive records because discussion of witnesses within investigatory record[s] would already be located in the complete investigatory file retrieved by ATF's search of the subject's name, here Tracy Worwood." *Id*. An ATF Agent in the Seattle field division conducted a separate but similar search in N-Force. *Id*. ¶ 16. The Agent's search returned the same results as the prior N-Force search. *Id*. Second, ATF's Seattle field division—the office in-charge of the criminal investigation—also conducted a search of its own records. *Id*. The ATF agent there located the physical case file from the investigation. *Id*. ATF combined the thirty-three pages of records identified through these searches and released the documents, following review, to Woodbury on May 18, 2022. *Id*. ¶ 9; Ex. 3 at 34-68.

Finally, at Woodbury's request to expand the scope of the FOIA request, ATF searched its "ATF Tips" e-mail account and the e-mail account for an employee whose responsibility it was to monitor the account.  Ex. 1, Kravitz Decl. ¶ 18.  ATF searched all emails between August 1, 2015, and October 28, 2022, for the following terms: "Tristan Worwood," "Worwood," "Martin Woodbury," and "Woodbury."  *Id.*  ATF selected the end date for the search, October 28, 2022, because that was the date on which it received the FOIA request.  *Id.*  ATF compiled, reviewed, and released to Woodbury the results of this search on November 22, 2022.  *Id.* ¶ 11.  ATF's searches were adequate because ATF used "methods which can be reasonably expected to produce the information requested."  *In re Clinton*, 970 F.3d 357, 367 (D.C. Cir. 2020) (cleaned up).

## II.    The Agencies Appropriately Withheld Non-Segregable Information.

"The agency bears the burden of establishing that a claimed exemption applies."  *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).  A court "may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith."  *Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021).  Here, the Agencies, relying on Exemptions 3, 5, 6, 7(C), and 7(E), properly withheld information contained in records created for a law enforcement purpose about a third-party.

### A.    The FBI Appropriately Withheld Documents Under Exemption 3 To Protect Intelligence Sources and Methods.

Exemption 3 protects from disclosure information which is "specifically exempted from disclosure by statute . . . if that statute—(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph."  5 U.S.C.

§ 552(b)(3).  The National Security Act of 1947 prohibits disclosure of "intelligence sources and methods."  50 U.S.C. § 3024(i)(1).  The prohibition against disclosure is absolute, giving federal agencies no discretion regarding disclosure of intelligence sources and methods.  *See CIA v. Sims*, 471 U.S. 159, 175-76 (1985).  This is true where intelligence sources and methods are used in a domestic or law enforcement capacity as the FBI did here.  *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 160 F. Supp. 3d 226, 237 (D.D.C. 2016).  The FBI "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute."  *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).

Here, the FBI asserted Exemption 3 to withhold intelligence sources and methods, as provided by the National Security Act.  Ex. 2, Seidel Decl. ¶ 33 (citing 50 U.S.C. § 3024(i)(1)).  Specifically, the FBI withheld information in the "FD-71 dated 12/16/2015 regarding report taken in response to phone-in complaint on public access line."  Ex. 4 at 49, *Vaughn* Index.  "Section 102A(i)(1) of the National Security Act [50 U.S.C. § 3024(i)(1)] requires the Director of National Intelligence to protect intelligence sources and methods from unauthorized disclosure and bars disclosure of information that either relates to intelligence sources and methods or can reasonably be expected to lead to unauthorized disclosure of such material."  *CREW*, 160 F. Supp. 3d at 260 (cleaned up).  "Because of this 'sweeping power,' courts are required to give 'great deference' to the agency's assertion that a particular disclosure could reveal intelligence sources or methods."  *Id.* (quoting *Whitaker v. CIA*, 64 F. Supp. 3d 55, 63–64 (D.D.C. 2014)).  During its line-by-line review, Seidel Decl. ¶ 28, the FBI determined that intelligence sources and methods would be revealed if any of the withheld information were disclosed to Woodbury.  *Id.* ¶ 35.  The FBI need not show more.  *See CREW*, 160 F. Supp 3d at 237.  Moreover, the FBI is not required to articulate a foreseeable harm for withholdings made under Exemption 3.  5 U.S.C. § 552(a)(8)(A)(i)(II).  The

D.C. Circuit has "consistently reiterated the principle of deference to the executive in the FOIA context when national security concerns are implicated[,]" and affords such determinations "substantial weight[.]" *Ctr. for Nat'l Sec. Stud. v. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003). The FBI's withholdings under Exemption 3, therefore, were proper.

**B.    ATF's Withholding of Deliberative Information Under Exemption 5 Was Proper.**

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Courts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege." *Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989). The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). To qualify for protection under the privilege, materials must be "both predecisional and deliberative." *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010). A document is predecisional "if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (cleaned up).

Here, ATF redacted pursuant to Exemption 5 in conjunction with the deliberative process privilege a portion of the body of an email. Ex. 3 at 563.[3]  As Kravitz explains, "[t]he portion

---

[3]    ATF also asserts Exemption 7(E) to withhold this excerpt. Ex. 1, Kravitz Decl. ¶ 25.

withheld is an excerpt from a December 2015 e-mail from a manager to a subordinate investigator and the material withheld under Exemption 5 includes recommendations and factors to consider while pursuing particular types of investigations or prosecutions." Ex. 1, Kravitz Decl. ¶ 23. "The strategies, factors, and recommendations do not reflect finalized agency policy." *Id.* Rather, "the records reflect pre-decisional discussion regarding a discretionary decision to investigate and/or prosecute particular classes of criminal activity." *Id.* Disclosure of this information "would reasonably be expected to harm the government's decision-making ability" because "ATF investigators must have the ability to freely discuss all aspects of case management, from inception to disposition." *Id.* ¶ 24. "This freedom must also include pre-decisional discussions on policy affecting multiple cases or specific classes of criminal activity" and its release "would have a chilling effect on investigators' freedom to openly discuss their cases, including the freedom to discuss broader investigatory and prosecutorial strategies." *Id.* ATF's withholding under Exemption 5 was appropriate.

### C.   The Agencies Appropriately Withheld Information Pursuant to Exemptions 6 and 7(C) to Protect the Personal Information of Third Parties.

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). It "requires a court to 'pursue two lines of inquiry,' first determining whether the records at issue are personnel, medical, or similar files, and then determining whether their disclosure would 'constitute a clearly unwarranted invasion of personal privacy,' which requires balancing 'the privacy interest that would be compromised by disclosure against any public interest in the requested information.'" *Smith v. CIA*, 246 F. Supp. 3d 117, 128 (D.D.C. 2017) (quoting *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008)). "The Supreme Court has stated that the term 'similar files' is to be construed broadly, and includes any 'disclosure

of information which applies to a particular individual.'"  *Id.* (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982)).  If the threshold requirement of "personnel and medical files and similar files" is met, the Court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."  *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999).  If the requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because "something, even a modest privacy interest, outweighs nothing every time."  *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).  Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue."  *Nat'l Ass'n of Home Bldgs v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).  Absent a public interest of the sort FOIA was intended to serve, the Court's inquiry ends, and the exemption must be upheld.  *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" and disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  "Exemption 7(C), which requires the government to prove only that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'"  *Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *Reps. Comm.*, 489 U.S. at 773).

In certain situations, Exemption 7(C) may be applied categorically. In *Reporters Committee*, the Supreme Court explained that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." 489 U.S. at 776. There, the plaintiff "sought disclosure of any arrests, indictments, acquittals, convictions, and sentences" of four individuals with organized-crime associations. *Id*. at 757. The Supreme Court held that "a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy" "as a categorical matter[.]" *Id*. at 780. The Supreme Court explained that the privacy interest is "at its apex" when the FOIA request seeks law enforcement information about a private citizen and the government controls the information "as a compilation, rather than as a record of 'what the Government is up to'" while "the public interest in disclosure is at its nadir." *Id*. The Privacy Act, which generally provides that "no agency shall disclose any record which is contained in a system of records except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" also supports the conclusion "that a strong privacy interest inheres in the nondisclosure." *Reps. Comm.*, 489 U.S. at 766 (cleaned up). The D.C. Circuit has, therefore, "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003) (compiling cases). Disclosure of such information is categorically prohibited, "unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Id*. (quoting *SafeCard Servs.*, 926 F.2d at 1206).

The at issue records Woodbury seeks were "compiled for law enforcement purposes" because they were "created as part of the government's investigation and criminal prosecution" of

Worwood.  *See Boyd v. Exec. Office of U.S. Att'ys*, 161 F. Supp. 3d 1, 10 (D.D.C. 2015); Ex. 1,

Kravitz Decl. ¶ 27 (declaring that "[t]he records responsive to this request were compiled for law

enforcement purposes"); Ex. 2, Seidel Decl. ¶ 37 (same).  The Court "ha[s] no need to consider

Exemption 6 separately because all information that would fall within the scope of Exemption 6

would also be immune from disclosure under Exemption 7(C)."  *Roth*, 642 F.3d at 1173.

Moreover, "when 'invoking Exemption 7(C), an agency need not establish much more than the

fact of disclosure to establish foreseeable harm' because 'disclosure of identifying information is

a harm in and of itself.'"  *Buzzfeed, Inc. v. Dep't of Homeland Security*, Civ. A. No. 19-3062

(DLF), 2023 WL 5133158, at *3 n.1 (D.D.C. Aug. 10, 2023) (quoting *Ecological Rts. Found. v.

EPA*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021))

1.    <u>FBI's Withholdings of Personal Information Was Appropriate.</u>

The FBI withheld the personally identifiable information of FBI and other government

employees and third-party names.  Ex. 2, Seidel Decl. ¶¶ 43-49.  The FBI correctly determined

that these persons maintain a strong privacy interest in this information, the release of which would

constitute a clearly unwarranted invasion of personal privacy, thus harming their privacy rights.

*Id*. ¶¶ 45-47, 49.  FBI Special Agents, FBI support staff, and non-FBI federal employees share the

same interest in protecting their personal information from disclosure.  *Id*. ¶ 45 (noting that FBI

professional staff "could be targeted for reprisal based on their involvement in specific

investigative activities"); *id*. ¶ 49 (noting that the rationale for protecting the identity of a non-FBI

federal employee "is the same as the rationale for protecting the identities of FBI employees").

Releasing the identity of federal employees could "seriously prejudice their effectiveness in

conducting other investigations or performing their day-to-day work" and could "could trigger

hostility toward" them.  *Id*. ¶ 44.  "Persons targeted by [government] investigations/investigative

activities, and/or those sympathetic to those targeted, could seek to inflict violence on [a

17

government employee] based on their participation in the deployment of certain investigative techniques." *Id*. The FBI properly withheld pursuant to Exemption 7(C) the names of "an FBI Special Agent and Professional Staff," *id*. ¶¶ 43-45, because law enforcement personnel "do not forgo altogether any privacy claim in matters related to official business." *Bartko v. Dep't of Just.*, 898 F.3d 51, 71 (D.C. Cir. 2018) (cleaned up). For the same reason, the FBI properly withheld the name of a non-FBI federal government employee. Ex. 2 Seidel Decl. ¶ 49; *see also Bartko*, 898 F.3d at 71.

The FBI also withheld the names and identifying information of a "third party of investigative interest" and of "third parties merely mentioned." Ex. 2, Seidel Decl. ¶¶ 46-48. With respect to withholding the name and identifying information of a third party of investigative interest, the FBI determined that "[b]eing identified as a subject of FBI investigative interest carries a strong negative connotation and a stigma, whether or not this individual ever committed criminal acts." *Id*. ¶ 46. Releasing this information "could subject them to harassment or embarrassment[,]" "undue public attention[,]" and "could result in professional and social repercussions[.]" *Id*. The FBI appropriately withheld the name and identifying information of the third party of investigative interest because it is categorically exempt from disclosure. *Schrecker*, 349 F.3d at 661.

With respect to withholding the names and identifying information of third parties merely mentioned, the FBI reasonably determined that "[t]hese third parties maintain substantial and legitimate privacy interests in not having this information disclosed and thus, being connected with FBI law enforcement matters." Ex. 2, Seidel Decl. ¶ 47. As Seidel explains, "[t]he FBI has information about these third parties in its files because these individuals were tangentially mentioned in conjunction with FBI investigative efforts." *Id*. However, "[t]hese individuals were not of investigative interest to the FBI." *Id*. The FBI properly withheld the name and identifying

information of third parties merely mentioned.  *See* Seidel Decl. ¶¶ 47-48; *see also Bartko*, 898 F.3d at 71.

2.    <u>ATF's Withholding of Personal Information Was Appropriate.</u>

As with the FBI's withholdings, ATF withheld the personal information of employees, witnesses, and third parties, including names, addresses, and telephone numbers.  *See* Kravitz Decl. ¶ 27.  ATF determined that the public's interest in the records did not outweigh the individuals' privacy interest to be free from harassment.  *Id*.

A close review of the records exemplifies ATF's narrow application of Exemptions 6 and 7(C) to withheld information.  For example, ATF released to Woodbury Report of Investigation number 4 ("Report 4"), comprising four pages.  Ex. 3 at 45-48.  The report begins that "[o]n December 9, 2015 SA [REDACTED] EEO [REDACTED] and A/GS [REDACTED] assisted Tacoma Police (TPD) with the service of a State search warrant for explosives."  *Id*. at 45.  The three redactions are obviously of names of individuals, likely ATF employees, which are appropriately withheld.  *See Bartko*, 898 F.3d at 71.  Likewise, the report redacts the names of the Special Agent who prepared the report, the name of the Acting Group Specialist who authorized the report, and the name of the Special Agent in Charge who served as second level reviewer for the report.  Ex. 3, at 45.  ATF also redacted the name of a Takoma Police Department Detective mentioned in the report.  *Id*. at 47.  ATF similarly redacted the personal information of law enforcement personnel elsewhere in the documents released to Woodbury.  *See, e.g., id*. at 49-51 (redacting the names of agents conducting a contact interview); *id*. at 258-61, 309, 558-59; 565-77 (redacting the personal information of law enforcement personnel appearing on email communications).  ATF properly withheld pursuant to Exemption 6 and 7(C) the personal information of federal and state law enforcement personnel.  *Bartko*, 898 F.3d at 71.

19

Report 4 continues, "[t]his search warrant was obtained using information provided by the ATF investigation into [REDACTED] (DOB [REDACTED]) of [REDACTED]." Ex. 3 at 45. The first redaction appears to be the name of a subject of the investigation. The second redaction appears to be that individual's date of birth. The third redaction appears to be the individual's residence. This information was properly redacted under Exemptions 6 and 7(C). *Schrecker*, 349 F.3d at 661. ATF's narrow application of the exemptions is evidenced by ATF's declining to redact names or personal information appearing in public sources, such as news articles. *See, e.g.*, *id*. at 432-33 (a news article from KIRO 7 TV stating that "Tracy Worwood, 44, faces charges of unlawful manufacture, sale, or offer to sell explosive as well as reckless endangerment").

Report 4 also notes that "This information was reported by [REDACTED] (DOB [REDACTED]), and [REDACTED] (DOB [REDACTED])." Ex. 3 at 45. This sentence obviously discusses the source of the information provided to ATF—i.e., two witnesses. The first and third redactions withhold these individuals' names; the second and fourth redactions withhold their dates of birth. ATF properly withheld the personal information of witnesses pursuant to Exemptions 6 and 7(C). *Bartko*, 898 F.3d at 71.

ATF also considered the public need for the portions withheld under Exemption 6. Ex. 1, Kravitz Decl. ¶ 27. ATF considered that the files were compiled for "for law enforcement purposes and contain personal information including names, addresses, and telephone numbers, the release of which could lead to harassment of employees." *Id*. ATF "determined that the public need for the portions of the records withheld pursuant to Exemptions 6 [] does not overcome the individual privacy interest that would be impacted by the disclosure of the records." *Id*. In a letter to Woodbury, ATF also noted that it is unable to disclose "personal information about living individuals to a member of the public" without "written consent, proof of death, or overriding

public interest." Ex. 3 at 70. ATF's redactions pursuant to Exemptions 6 and 7(C) were appropriate. *Bartko*, 898 F.3d at 71.

> 3.    The Agencies' Withholding of Information Regarding a Person of Interest
> was Proper.

The Agencies' *Glomar* responses concerning records related to Worwood was proper because "merely acknowledging that the [Agencies] [have] information regarding" Worwood "would tend to associate [him] with criminal activity, thus impinging on [his] privacy." *Roth*, 642 F.3d at 1178. "[T]hird parties . . . mentioned in investigatory files maintain a privacy interest in keeping secret the fact that they were subjects of a law enforcement investigation." *Bartko*, 898 F.3d at 71. Even a convicted defendant has a privacy interest in limiting disclosure, which "may be embarrassing and stigmatizing, and may endanger one's prospects for successful reintegration into the community." *ACLU v. Dep't of Just.*, 655 F.3d 1, 7 (D.C. Cir. 2011) (cleaned up). Disclosure is categorically prohibited. *Schrecker*, 349 F.3d 661.

It is Woodbury's "obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). Here, the FBI did not perceive any legitimate or countervailing public interest that would be served by the disclosure of Worwood's personal information. Ex 2., Seidel Decl. ¶¶ 44-46, 48, 49. Likewise, ATF determined that any "need for the portions of the records withheld pursuant to Exemptions 6 and 7(C) does not overcome the individual privacy interest that would be impacted by the disclosure of the records." Ex. 1, Kravitz Decl. ¶ 27.

Moreover, Woodbury cannot establish a countervailing public interest in disclosure. Woodbury initially asserted only a personal interest for seeking information about the Agencies' investigation: he "hope[s] to be recognized by the military for [his] actions which led to the

recovery of [its] ordinance[.]"  Ex. 3 at 580 (Woodbury email dated Jan. 14, 2016).  Years later, in his FOIA request, Woodbury articulated a public interest "to better understand the response by the FBI and other law enforcement agencies to being informed of there being a dangerous explosive device in close proximity to an elementary school in a residential neighborhood[.]"  Ex. 4 at 4.  Woodbury asserted that he "plans to review and synthesize" the information he receives and share that information with elected officials and the media "to ensure that there are appropriate and timely responses to dangerous incidents involving explosive devises[.]"  *Id.*  Woodbury's personal motivations aside, the public interest that he asserts hardly suffices to overcome Worwood's privacy interest because Woodbury cannot proffer—as he must—any "evidence that would warrant a belief by a reasonable person" that the Agencies acted negligently or improperly after they received the tip.  *See Favish*, 541 U.S. at 174.  Absent such "clear evidence[,]" the Court should presume that the Government acted properly.  *Id.* at 174-75.

Ultimately, release of this personally identifiable information in no way advances FOIA's purpose "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Rose*, 425 U.S. at 361.  In sum, because there is little, if any, countervailing public interest that can overcome the significant privacy interest of these individuals—which in these circumstances are at their "apex," *Reps. Comm.*, 489 U.S. at 780—the Agencies properly redacted personally identifiable information for third parties and federal employees pursuant to Exemption 6 and 7(C).  *Schrecker*, 349 F.3d at 661.

### D.    The Agencies Appropriately Withheld Information Pursuant to Exemption 7(E) to Protect Law Enforcement Techniques and Procedures.

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes" where the release of information would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for

law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). "[T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* (cleaned up). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* (cleaned up).

1. The FBI Appropriately Withheld the "Sensitive Investigative File Numbers" of its Database Pursuant to Exemption 7(E).

As the FBI's *Vaughn* index indicates, the FBI withheld pursuant to Exemption 7(E) certain information contained in the FD-71. Ex. 4 at 49, *Vaughn* Index. The FBI withheld information that would "disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions." Ex. 2, Seidel Decl. ¶ 51. Specifically, the FBI seeks to protect "sensitive investigative file numbers." *Id.* ¶ 53. As Seidel explains, "the release of file numbering convention identifies the investigative interest or priority given to such matters." *Id.* That is because the "file numbers contain three separate portions" each of which provides certain information: the type of investigation, office of origin codes, and the unique investigative initiatives these files were created to memorialize. *Id.* ¶¶ 53-55. Releasing this information would reveal the types of investigations being pursued, disclose unknown FBI investigations or intelligence gathering initiatives or the FBI's failure to detect certain types of criminal behavior, and provide criminals with an idea of

how FBI investigations may be interrelated. *Id.* At least one Judge in this District has found the FBI's withholding of these "sensitive investigative file numbers" appropriate under Exemption 7(E) because "disclosing this information would give bad actors an exceptional understanding of the FBI's procedures." *Callimachi v. FBI*, 583 F. Supp. 3d 70, 89-90 (D.D.C. 2022) (quotation omitted). The FBI appropriately withheld this information pursuant to Exemption 7(E).

       2.    ATF Appropriately Withheld Information Regarding Techniques and <u>Codes Not Known to the Public.</u>

As Kravitz declares, ATF created its records "in conjunction with ATF's statutory obligation to investigate criminal violations of federal firearms, arson, and explosives laws." Ex. 1, Kravitz Decl. ¶ 29. The redactions it applies pursuant to Exemption 7(E) "contain law enforcement techniques and codes not known to the public, including specific law enforcement mobilization and surveillance tactics[.]" Ex. 1, Kravitz Decl. ¶ 29. ATF also redacted limited information in emails generated during the investigation. *See* Ex. 3 at 558, 563, 566, 569, 571, 574, 757, 583, 622, 631, 636.

A careful review of ATF's productions to Woodbury reveals the narrow application of the exemption. For example, ATF redacted the recipient of a Law Enforcement Intelligence Bulletin. *Id.* at 427. ATF asserted Exemptions 6, 7(C), and 7(E) for that withholding. ATF asserted Exemption 7(E) to protect the fact that ATF worked with a certain law enforcement partner. ATF also asserted Exemption 7(E) to protect certain non-public, law enforcement-related e-mail addresses from being made public to protect these addresses from being compromised or subject to cyber-attacks. That e-mail address is also properly withheld pursuant to Exemption 7(C).

As another example, a Special Agent in the Seattle sent an email dated December 9, 2015, with the subject line "SIT REP." *Id.* at 634. ATF asserted Exemption 7(E) only to the body of the email, which apparently discusses the then-ongoing ATF investigation; it is entirely reasonable to

conclude, as ATF asserts, that the redacted portion contains law enforcement techniques that ATF used during the investigation. Release of this information "could enable individuals outside of the agency to circumvent agency functions and gain access to sensitive investigative information," Ex. 3 at 70, and "could reasonably be expected to risk circumvention of the law." Ex. 1, Kravitz Decl. ¶ 29; *see also Blackwell*, 646 F.3d at 42.

ATF also asserts Exemption 7(E) to withhold a portion of "a December 2015 email from a manager to a subordinate investigator" which it also withheld pursuant to Exemption 5. *See* Ex. 1, Kravitz Decl. ¶¶ 23, 25; Ex. 3 at 563. While ATF did not assert Exemption 7(E) to this portion of the record when it released the documents to Woodbury, it is permitted to assert additional bases for withholding "in the original district court proceedings." *Maydak v. Dep't of Just.*, 218 F.3d 760, 764 (D.C. Cir. 2000). As Kravitz explains, the redacted portion concerns "recommendations and factors to consider while pursuing particular types of investigations or prosecutions[.]" *Id.* ¶ 25. "[I]f released, [the discussion] would disclos[e] techniques and procedures for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law." *Id.* As the same material was withheld under both Exemption 5 and Exemption 7(E), if the Court finds that the withholding is proper under either exemption, then it need not reach the applicability of that other exemption to the same withheld material.

## III.    **The Agencies Have Only Withheld Non-Segregable Information.**

"FOIA also requires agencies to release 'any reasonably segregable portion of a record.'" *Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting 5 U.S.C. § 552(b)). Thus, "an agency must 'consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible' and must 'take reasonable steps necessary to segregate and release nonexempt information.'" *Id.* (quoting 5 U.S.C. § 552(a)(8)(A)(ii)(I)–(II)). The D.C. Circuit has directed that "the agency still must release any

reasonably segregable information within the record that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects" even where "an exemption covers an entire agency record[.]"  *Id.*

### A. The FBI's Segregability Analysis Was Reasonable to Withheld Personnel Records.

Here, the FBI withheld in full only three of its eight responsive pages.  Ex. 2, Seidel Decl. ¶ 60.  The three pages the FBI withheld "are military personnel records."  *Id.*  The Privacy Act prohibits their release to a third party absent the individual's prior written consent, unless disclosure is required by FOIA.  5 U.S.C. § 552a(b)(2).  The FBI consulted with the U.S. Army regarding their release, and the Army requested that the information be withheld pursuant to FOIA Exemption 6.  Ex. 2, Seidel Decl. ¶ 57.  The Army explained that "[t]he documents are military personnel records that are personal in nature and pertain to a third party."  *Id.* ¶ 58.  Disclosure of these records to any person "other than the person about whom the information is about[] would result in a clearly unwarranted invasion of personal privacy."  *Id.*  Based on its own line-by-line review, the aim of which was to "provide [Woodbury] with all information in the public domain and with all reasonably segregable, non-exempt information," *id.* ¶ 25, and its consultation with the Army, the FBI determined that "there was no information that could be reasonably segregated for release without triggering foreseeable harm to one or more of the FOIA exemptions."  *Id.* ¶ 60.

### B. ATF's Line-By-Line Segregability Analysis Was Reasonable.

ATF withheld fifty-three pages in full. Kravitz Decl. ¶ 11.  ATF's careful, line-by-line review ensured that "[a]ll meaningful segregable information has been released to [Woodbury.]"  *Id.* ¶ 30.  The withheld material is "inextricably intertwined with exempt material" and "no additional information could be released without foreseeable harm to ATF" as discussed in each exemption above.  *Id.*  These records were created for a law enforcement purpose and the

overwhelming majority of redactions—personal information contained in investigatory files—is categorically exempt from disclosure absent a clear showing of agency misconduct, which is absent here.  *See Schrecker*, 349 F.3d at 661; *SafeCard Servs., Inc.*, 926 F.2d at 1206.

## CONCLUSION

For these reasons, Defendant respectfully requests that the Court find that the Agencies' disposition of Plaintiff's FOIA requests proper, grant Defendant's motion for summary judgment, and enter judgment in Defendant's favor.

Dated:  May 31, 2024                    Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. Bar #481052
                                        United States Attorney

                                        BRIAN P. HUDAK
                                        Chief, Civil Division

                                        By: _____/s/ *Dimitar P. Georgiev*_____
                                            DIMITAR P. GEORGIEV, D.C. Bar #1735756
                                            Assistant United States Attorney
                                            601 D Street, NW
                                            Washington, DC 20530
                                            (202) 815-8654

                                        *Counsel for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTIN WOODBURY,

            Plaintiff,

        v.                                          Civil Action No. 21-3384 (DLF)

DEPARTMENT OF JUSTICE,

            Defendant.

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion for summary judgment, and the entire

record herein, it is hereby

ORDERED that Defendant's motion is GRANTED; and it is further

ORDERED that summary judgment is ENTERED in favor of Defendant.

SO ORDERED.


Dated: _____                    _____
                                           DABNEY L. FRIEDRICH
                                           United States District Judge