UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTIN WOODBURY,

              Plaintiff,

      v.

DEPARTMENT OF JUSTICE,

            Defendant.

Civil Action No. 21-3384 (DLF)

**DEPARTMENT OF JUSTICE'S COMBINED REPLY IN FURTHER SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
<u>WOODBURY'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ................................................................................................ i

**TABLE OF AUTHORITIES** ...................................................................................... ii

**INTRODUCTION**......................................................................................................... 1

**ARGUMENT** ................................................................................................................. 2

     I.    Woodbury Failed to Exhaust Administrative Remedies for All Challenges to the FBI's Processing of His Request that He Now Raises in this Court. ...................... 2

     II.   Neither Agency Had An Obligation To Conduct Follow-Up Searches................... 9

     III.  ATF's Segregability Analysis Was Proper. .......................................................... 15

     IV.  ATF's Referral of Records to the Army Did Not Constitute Improper Withholding. ............................................................................................................ 18

**CONCLUSION** .......................................................................................................... **21**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguiar v. DEA*,
    865 F.3d 730 (D.C. Cir. 2017) ..................................................................... 10, 11, 14

*Bader Family Found. v. Dep't of Ed.*,
    630 F. Supp. 3d 36 (D.D.C. 2022) ................................................................ 10, 11, 12

*Center for Nat'l Sec. Studs. v. Dep.'t of Just.*,
    215 F. Supp. 2d 94 (D.D.C. 2002) ..................................................................... 11, 12

*\*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ........................................................................................ 1, 15, 16

*\*Dettmann v. Dep't of Just.*,
    802 F.2d 1472 (D.C. Cir. 1986) ........................................................................... 2, 3, 9

*Hall & Assocs. v. EPA*,
    77 F. Supp. 3d 40 (D.D.C. 2014) ........................................................................ 2, 3, 4

*Hidalgo v. FBI*,
    344 F.3d 1256 (D.C. Cir. 2003) ................................................................................... 2

*Hillier v. Dep't of Homeland Sec.*,
    Civ. A. No. 16-1836 (DLF), 2019 WL 4737066 (D.D.C. Sep. 27, 2019) ............................... 17

*Hunton & Williams LLP v. EPA*,
    248 F. Supp. 3d 220 (D.D.C. 2017) ............................................................................ 15

*Iturralde v. Comptroller of Currency*,
    315 F.3d 311 (D.C. Cir. 2003) ........................................................................... 10, 14

*Johnson v. Exec. Off. for U.S. Att'ys*,
    310 F.3d 771 (D.C. Cir. 2002) ..................................................................................... 9

*Judge Rotenberg Ed. Ctr., Inc. v. FDA*,
    376 F. Supp. 3d 47 (D.D.C. 2019) .............................................................................. 18

*Kleinert v. Bureau of Land Mgmt.*,
    132 F. Supp. 3d 79 (D.D.C. 2015) .............................................................................. 11

*\*Kowalczyk v. Dep't of Just.*,
    73 F.3d 386 (D.C. Cir. 1996) .............................................................. 1, 10, 12, 15

*Lewis v. Dep't of Just.,*
    733 F. Supp. 2d 97 (D.D.C. 2010) ....................................................................... 18

*Lewis v. Dep't of the Treasury,*
    Civ. A. No. 17-0943 (DLF), 2020 WL 1667656 (D.D.C. Apr. 3, 2020) ................................. 17

*\*Magassa v. TSA,*
    No. 22-5155, 2023 WL 8826564 (D.C. Cir. Dec. 21, 2023) ............................................. 2, 3, 6

*Maryland v. Dep't of Vets. Affs.,*
    130 F. Supp. 3d 342 (D.D.C. 2015) ....................................................................... 2

*McGehee v. CIA,*
    697 F.2d 1095 (D.C. Cir. 1983) ........................................................................... 18

*Mead Data Ctr., Inc. v. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ............................................................................. 17

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ........................................................................... 15

*Nat'l Sec. Couns. v. CIA,*
    960 F. Supp. 2d 101 (D.D.C. 2013) ....................................................................... 16

*Oglesby v. Dep't of Army,*
    920 F.2d 57 (D.C. Cir. 1990) ............................................................................. 2, 3

*Peralta v. U.S. Attorney's Office,*
    136 F.3d 169 (D.C. Cir. 1998) ............................................................................. 19

*Physicians for Hum. Rts. v. DOD,*
    675 F. Supp. 2d 149 (D.D.C. 2009) ....................................................................... 8

*Quinon v. FBI,*
    86 F.3d 1222 (D.C. Cir. 1996) ............................................................................. 17

*Reps. Comm. for Freedom of Press v. FBI,*
    877 F.3d 399 (D.C. Cir. 2017) ............................................................................. 9

*Salas v. Off. of Inspector Gen.,*
    577 F. Supp. 2d 105 (D.D.C. 2008) ....................................................................... 16

*Schneider v. Dep't of Just.,* Civ. A.,
    No. 18-0474 (DLF), 2019 WL 4737059 (D.D.C. Sep. 28, 2019) ......................................... 17

*Schrecker v. Dep't of Just.,
  349 F.3d 657 (D.C. Cir. 2003) ................................................................................ 1, 15, 16

*Sussman v. Marshals Service,
  494 F.3d 1106 (D.C. Cir. 2007) ................................................................................ 18, 19, 20

*Taylor Energy Co. LLC v. Dep't of Interior,
  271 F. Supp. 3d 73 (D.D.C. 2017) ................................................................................ 10, 15

United States v. Tucker Truck Lines,
  344 U.S. 33 (1952) ................................................................................................................ 9

*UNROW Hum. Rts. Impact Litig. Clinic v. Dep't of State,
  134 F. Supp. 3d 263 (D.D.C. 2015) ............................................................................ 18, 19, 20

Valencia-Lucena v. Coast Guard,
  180 F.3d 321 (D.C. Cir 1999) ................................................................................ 11, 14

Wright v. Dep't of Navy,
  2020 WL 5545543 (D.D.C. Sep. 16, 2020) .............................................................................. 10

**Statutes**

5 U.S.C. § 552(a) ................................................................................................................ 4, 18

5 U.S.C. § 552(h) ................................................................................................................... 4

## INTRODUCTION

Defendant Department of Justice (the "Department") hereby replies in support of its Motion for Summary Judgment ("Dep't's Mot.), ECF No. 25, and opposes Plaintiff Martin Woodbury's ("Woodbury") Cross-Motion for Summary Judgment ("Woodbury's Cross-Mot."), ECF No. 27. This Freedom of Information Act ("FOIA") case concerns Woodbury's request for Federal Bureau of Investigation ("FBI") and Bureau of Alcohol, Tobacco Firearms and Explosives ("ATF") files from a criminal investigation of a third-party individual who has not authorized release of any files related to him, should they exist.

None of the alleged issues Woodbury raises entitles him to summary judgment. As an initial matter, Woodbury failed to exhaust administrative remedies with respect to all his claims against the FBI. Even if he had, his claims fail. Woodbury attempts to question the reasonableness of the Agencies' searches by asserting that the Agencies should have conducted follow-up searches; but nothing in the documents "contain[s] a lead so apparent that the Agency could not in good faith fail to pursue it." *Kowalczyk v. Dep't of Just.* 73 F.3d 386, 389 (D.C. Cir. 1996) (cleaned up). Woodbury also complains that the FBI's processing of his request was too complex; yet, he does not challenge the reasonableness of the searches the FBI conducted. Woodbury further challenges ATF's segregability analysis; but, he does not challenge that the records concern the criminal investigation of a third-party and are therefore categorically exempt from release. *See Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 780 (1989); *Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003). Finally, Woodbury asserts that ATF withheld records by referring them to the Army; yet, he points to no law prohibiting ATF from referring records to an originating agency for direct response to a requester. The Department respectfully requests that the Court grant its motion, deny Woodbury's cross-motion, and enter judgment for the Department.

**ARGUMENT**

**I.    Woodbury Failed to Exhaust Administrative Remedies for All Challenges to the FBI's Processing of His Request that He Now Raises in this Court.**

It is well settled that "[a] failure to exhaust the administrative appeals process precludes judicial review in FOIA cases." *Magassa v. TSA*, No. 22-5155, 2023 WL 8826564, at *3 (D.C. Cir. Dec. 21, 2023) (citing *Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003)). Moreover, "a plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request—and thus properly seek judicial review regarding that request—and yet not have exhausted her remedies with respect to another aspect of a FOIA request." *Dettmann v. Dep't of Just.*, 802 F.2d 1472, 1477 (D.C. Cir. 1986); *see also Maryland v. Dep't of Vets. Affs.*, 130 F. Supp. 3d 342, 350 (D.D.C. 2015) (concluding that a pro se plaintiff's failure to administratively appeal specific issues meant that he could not obtain judicial review on those issues); *Hall & Assocs. v. EPA*, 77 F. Supp. 3d 40, 45-47 (D.D.C. 2014) (concluding that plaintiff could not obtain judicial review of claims not raised in its administrative appeal). It is incumbent upon the requestor to craft her administrative appeal such that it sufficiently describes the issues she requests that the agency reconsider, because only by doing so can the agency "'exercise its discretion and expertise on the matter and [ ] make a factual record to support its decision.'" *Hidalgo*, 344 F.3d at 1252 (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990).

In *Magassa*, the Transportation Security Administration "refused to 'confirm or deny' the existence of any records that might indicate [the requestor's] status." *Magassa*, 2023 WL 8826564, at *1. While the requestor administratively appealed certain parts of the response to his request, his "administrative appeal [did] not raise [TSA's *Glomar* response] or the Watch List records." *Id.* at *3. The D.C. Circuit held that the requestor's "failure to put TSA on

notice of his objections to the Glomar response, or to give the agency an opportunity to respond, precludes any belated judicial review of those contentions." *Id.*

Likewise in *Dettmann*, a requester asked the FBI for records containing the requester's name. *Dettmann*, 802 F.2d at 1473. Following established FBI policy regarding such "see" references, the FBI produced the records, but withheld portions not relevant to the requester. *Id.* at 1473–74. While the requester administratively appealed certain withholdings, the requester did not "protest against the FBI's practice with respect to 'see' reference materials." *Id.* at 1474. The D.C. Circuit dismissed the complaint regarding the FBI's "see" reference policy for failure to exhaust administrative remedies. *Id.* at 1477.

*Hall* is likewise instructive. There, a requestor administratively appealed two issues: (1) "The responsive documents produced by Headquarters did not respond to the FOIA request[,]" and (2) "Headquarters' fee of $1,015.75 is inappropriate and excessive." *Hall*, 77 F. Supp. 3d at 45. Judge Bates scrutinized the requestor's appeal letter and denied plaintiff relief on its claim that the EPA failed to "provide a legitimate basis and rationale for withholding responsive documents, or segregable portions thereof," because the requestor "did not raise this ground for relief until it filed the complaint in this case—and that is far too late." *Id.* (cleaned up).

That the requestor should meaningfully participate in the administrative process is no surprise, because, at a minimum, it gives the agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby*, 920 F.2d at 61. Successful administrative appeals also can avoid litigation and the resulting burdens on the courts. Moreover, the requirement for administrative appeals complements, the numerous alternatives to FOIA litigation that Congress created, which collectively reflect Congress's strong preference that agencies and requestors work together outside of litigation. Congress established

at each agency a "FOIA Public Liaison, who shall assist in the resolution of any disputes between the requester and the agency." 5 U.S.C. § 552(a)(6)(B)(ii). It also created a government-wide Office of Government Information Services to "offer mediation services to resolve disputes . . . as a nonexclusive alternative to litigation." 5 U.S.C. § 552(h). The creation of two discrete, voluntary alternatives to litigation signals Congress's preference for encouraging FOIA requesters and agencies, both acting in good faith, to minimize FOIA's costs and burdens. That can only be done when plaintiffs meaningfully engage in the administrative process. That did not happen here.

To the contrary, here Woodbury failed to exhaust administrative remedies for both issues he now raises in this litigation concerning the FBI's processing of his request. Before this Court, Woodbury asserts that the FBI (1) "improperly processed [Woodbury's] FOIA request" by splitting it "into three separate records requests," Woodbury's Cross-Mot. at 13 (emphasis omitted), and (2) "fail[ed] to undertake follow-up actions for additional responsive records," *id*. at 15. "A close look" at Woodbury's "appeal letter confirms" that he did not raise either issue, however. *Hall*, 77 F. Supp. 3d at 45. In his administrative appeal, Woodbury sought "reconsideration of the May 12, 2021, response." Dep't's Mot. Ex. 4 at 27 (FOIA Appeal (FBI FOIPA Request 1480174)), ECF No. 25-4 at 27. As the basis of his appeal Woodbury only stated that:

> the decision-maker misapplied FOIA exemptions (b)(3), (b)(6), (b)(7)(C) and (b)(7)(E), and applied that exemption [sic] in an overly broad manner, by failing to provide all non-exempt segregable portions of the records requested. In addition, it is Mr. Woodbury [sic] position that the agency has failed to date to undertake an adequate search for responsive records in a manner reasonably calculated to locate all responsive records.

*Id*.

As becomes obvious, Woodbury's administrative appeal did not challenge the fact that the FBI separated his request into three parts, even though he was aware of that fact. *First*, on

November 5, 2020, the FBI denied the portion of Woodbury's request relating to Jessica Weber because the waiver from Weber he provided did not authorize the FBI to release Weber's information to Woodbury or his attorney.  Reply Ex. 2 at 1, ECF No. 28-2.  That response conspicuously stated that it was assigned Request Number 1480256-000.  *Id*.  It also notified Woodbury of the reason the FBI denied it—his request sought information regarding one or more third-party individuals.  *Id*.  Weber's waiver only authorized release of information to Weber; it did not authorize the FBI to release any information to Woodbury or his attorney.  *See* Dep't's Mot. Ex. 4 at 8, ECF No. 25-4; Reply Ex. 1, 2d Decl. of Michael G. Seidel ("Seidel 2d Decl.") ¶ 7.  The Weber response also advised Woodbury that the FBI closed the request and that he could reopen it by providing a completed waiver listing his attorney's name in the appropriate field.  Reply Ex. 2 at 1, ECF No. 28-2.  To date, Woodbury has not provided a corrected waiver.  *See* Reply Ex. 1, Seidel 2d Decl. ¶ 8, ECF No. 28-1.

*Similarly*, on November 24, 2020, the FBI denied the part of Woodbury's request relating to Worwood, stating that it "will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C)."  Dep't's Mot. Ex. 4 at 15, ECF No. 25-4.  Like the November 5, 2020, Weber response, this determination conspicuously noted that the request was assigned a unique, different request number: 1481654-000.  *Id*.  Likewise, Woodbury did not provide a privacy waiver from Worwood authorizing release of any information concerning Worwood to Woodbury or Woodbury's attorney.  Reply Ex. 1, 2d Seidel Decl. ¶ 4.  Moreover, the news articles Woodbury appended to his FOIA request do not link Worwood to an FBI investigation, nor has the FBI publicly acknowledged any investigation beyond receipt of Woodbury's tip or complaint about Worwood.  *Id*.  Thus, there was nothing else the FBI could do.

*Finaly*, on the same day as the Weber response—November 5, 2020—the FBI notified Woodbury that it assigned Request Number 1480174-000, to the part of the request concerning Woodbury. Dep't's Mot. Ex. 4 at 19, ECF No. 25-4. On May 12, 2021, the FBI notified Woodbury that it reviewed eight pages, released four, and withheld information pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E), and Privacy Act Exemption J(2). *Id*. at 22. When he appealed, *id*. at 27, Woodbury tailored his appeal to the FBI's asserted exemptions and the reasonableness of the search in that specific response—referring to it by date (May 12, 2021) and number (1480174-000), just as the *Magassa* requestor tailored his administrative appeal. *See Magassa*, 2023 WL 8826564, at \*1. By the time of his August 9, 2021, appeal, Woodbury had received the FBI's responses relating to Weber (dated November 5, 2020) and Worwood (dated November 24, 2020), yet Woodbury did not question the FBI's creation of separate FOIA numbers or otherwise object to the FBI's responses related to Weber or Worwood. He did not raise the FBI's determination that Woodbury failed to provide an appropriate waiver from Weber. He did not question the *Glomar* response concerning Worwood. Nor did Woodbury challenge the FBI's alleged failure to conduct follow-up searches. Woodbury's appeal only included what appears to be a boilerplate allegation that the FBI did not undertake an adequate search and the specific withholdings to the documents released with the May 12, 2021, response. He did not cure the deficiencies the FBI identified in his request–his failure to provide privacy waivers authorizing the FBI to release Weber or Worwood's information to Woodbury or Woodbury's counsel. Just as in *Magassa* the D.C. Circuit dismissed the requester's failure to challenge the *Glomar* response for failure to administratively exhaust the claims, *Magassa*, 2023 WL 8826564, at \*3, so too should this Court dismiss all of Woodbury's claims against the FBI on the same grounds.

Moreover, Woodbury's complaint does not even raise the issues he administratively appealed. The only challenges Woodbury pressed in his administrative appeal were the search and withholdings related to the FBI's May 12, 2021, response to FOIA request 1480174-000. But in his complaint, Woodbury only raises the FBI's processing of FOIA request number 1481654-000. Compl. ¶ 25, ECF No. 1. That tracking number concerns the part of Woodbury's request related to Worwood. Woodbury did not raise that *Glomar* response in his administrative appeal, and so he failed to exhaust administrative remedies.

Some of the alleged deficiencies Woodbury complains about exemplify the reasons why a requestor's meaningful participation in the administrative process is necessary to avoid wasteful litigation. For example, Woodbury asserts, without support, that the FBI failed to search for a photograph. Woodbury Cross-Mot. at 16. The portion of the document he references discusses an "[e]nclosed picture"—singular—meaning the FBI had in its possession one picture, not multiple pictures. Woodbury's Cross-Mot. Ex. 3 at 12, ECF No. 27-3. Woodbury already received an unredacted copy of the photograph that was in the FBI's possession. Reply Ex. 1, 2d Seidel Decl. ¶ 12, ECF No. 28-1; *see also* Woodbury's Cross-Mot. Ex. 3 at 14, ECF No. 27-3.

Likewise, Woodbury complains that the FBI did not conduct follow-on searches for records based on a recommendation to "open a new case." Woodbury Cross-Mot. at 16 (citing ECF 27-3 at 12). The FBI already searched its casefiles. As Seidel explains, the FBI's Central Records System is the FBI's repository for investigative files. Gov't Mot., Ex. 2 Seidel Decl. ¶ 17, ECF No. 25-2. When a "case file is opened, it is assigned a Universal Case File Number." *Id*. ¶ 18. Individuals who are the subject or focus of an investigation are indexed. *Id*. ¶ 19. Those indices and records are searchable through the FBI's management system, Sentinel. *Id*. ¶ 20. The FBI searched for the terms "Woodbury, Martin" and "Martin Woodbury." *Id*. ¶ 24. There is no

indication from the FBI's search effort that responsive records would reside in any other FBI system or location; in short, the FBI searched all locations and files reasonably likely to contain responsive records and there is no basis for the FBI to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA. *Id.* ¶ 25. Moreover, whether the FBI opened such investigation is subject to the *Glomar* response Woodbury received on November 24, 2020, Reply Ex. 1, 2d Seidel Decl. ¶ 11, ECF No. 28-1, which Woodbury did not administratively appeal or otherwise challenge here.

Woodbury argues that "there is simply no rational, logical[,] or appropriate reason for there being any separate search parameters for this record request[.]" Woodbury Cross-Mot. at 14. This line of argument, unsupported by a single citation to law or followed by a discernable conclusion, is a red herring. And in fact there was good reason for the FBI to process the request in the manner it did. The FBI split the request into three so that it could process the part of the request that was perfected—concerning Woodbury—while also notifying Woodbury of the defects in providing privacy waivers from Weber and Worwood. Reply Ex. 1, Seidel Decl. ¶ 7, ECF No. 28-1. This promoted efficiency for the FBI and allowed it to address the portion of the request that could actually be processed. *Id.* ¶ 9. As of this submission, nearly four years later, Woodbury still has not cured the deficiencies for the rest of his request by providing signed waivers permitting the FBI to disclose third party information to Woodbury or his attorney. *Id.* Moreover, the FBI's actions did not impact the FBI's final determination in response to his FOIA request. *Id.*

Furthermore, the FBI has "discretion in crafting lists of search terms that [it] believe[s] to be reasonably tailored to uncover documents responsive to the FOIA request." *Physicians for Hum. Rts. v. DOD*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009). The only relevant standard is that of "reasonableness." *Id.* "FOIA, requiring as it does both systemic and case-specific exercises of

discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). As discussed in the Department's motion, the FBI's searches were adequate. Dep't's Mot. at 8-10. The FBI provided a detailed declaration describing Woodbury's FOIA request, the FBI's databases, and the manner in which the FBI conducted its search. *See generally* Dep't's Mot. Ex. 2, Seidel Decl., ECF No. 25-2. Woodbury's grandstanding aside, he does not assert that the FBI's separate searches were inadequate or deficient. Woodbury's Cross-Mot. at 13-15. Simply put, it is "unfair" for this Court "to decide an issue which the FBI never had a fair opportunity to resolve prior to being ushered into litigation." *Dettmann*, 802 F.2d at 1476 n.8 (citing *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 36–37 (1952)). Indeed, "if exhaustion of remedies is to have meaning, it surely must bar review" of Woodbury's claims here. *Id*. at 1744. And even if he had administratively appealed these determinations, he has failed to cure the deficiencies—failure to provide waivers permitting release of information to Woodbury or his attorney—so in any event there is no further action the FBI can take. Reply Ex. 1, Seidel Decl. ¶ 8, ECF No. 28-1. For these reasons, Woodbury failed to administratively exhaust, and he thus has waived, claims about the FBI's processing of his request and the adequacy of its search.

## II.    <u>Neither Agency Had An Obligation To Conduct Follow-Up Searches.</u>

Woodbury does not challenge the FBI or ATF's initial searches, including the search criteria used, the date ranges, or locations searched. *See* Woodbury's Cross-Mot. at 6-8, 13-15. The Agencies need not show anything more to obtain summary judgment. *See Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017). Woodbury insists, however, that the Agencies were obliged "to undertake appropriate follow-up search actions to locate additional responsive records, whenever there is clear evidence that there are additional responsive records which have not been located or provided." Woodbury's Cross-Mot. at 6, 15.

It is "the rare case indeed in which an agency record contains a lead so apparent that it cannot in good faith fail to pursue it." *Kowalczyk*, 73 F.3d at 389 (cleaned up). "[T]he standard of adequacy for a search is one of reasonableness and not whether any further documents might conceivably exist." *Taylor Energy Co. LLC v. Dep't of Interior*, 271 F. Supp. 3d 73, 88 (D.D.C. 2017) (internal quotations and emphasis omitted). "[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see also Aguiar v. DEA*, 865 F.3d 730, 733 (D.C. Cir. 2017); *Bader Family Found. v. Dep't of Ed.*, 630 F. Supp. 3d 36, 42-44 (D.D.C. 2022); *Coleman on behalf of Wright v. Dep't of Navy*, Civ. A. No. 19-3191 (ABJ), 2020 WL 5545543, at *6 (D.D.C. Sep. 16, 2020). An agency has no obligation to conduct follow-on searches, unless the records "contain a lead so apparent that the Agency could not in good faith fail to pursue it." *Kowalczyk*, 73 F.3d at 389 (cleaned up).

In *Iturralde*, the D.C. Circuit deemed the Comptroller of Currency's search adequate even where the search failed to find a specific document that the requester identified had not been found. *Iturralde*, 315 F.3d at 315. The Court reasoned that "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," because "particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Id*. Similarly in *Coleman*, Judge Jackson rejected a challenge to the adequacy of the Navy's search where the Navy did not produce video footage that the Navy conceded had existed at some point. *Coleman*, 2020 WL 5545543, at *6. The court noted that the requestor "cannot rely on the fact that [the Navy] has not discovered the missing footage to prove that its search was inadequate." *Id*.

Conversely, in *Aguiar*, the D.C. Circuit found the DEA's search inadequate where it failed to locate "four specific administrative subpoenas" known to have existed at the time of the search. *Aguiar*, 865 F.3d at 733. The DEA did not explain why searching its records database was "the only reasonable place to look for the subpoenas[.]" *Id*. at 739. In *Bader Family Foundation*, this Court similarly held that the Department of Education's search was inadequate where the requestor provided "concrete evidence [] that [missed] files actually exist." *Bader Fam. Found.*, 630 F. Supp. 3d at 43 (internal quotations and emphasis omitted). The requester identified at least two emails meeting the agency's search parameters that the agency did not produce, and the agency conceded "that its search should have captured them, but did not." *Id*.

The cases Woodbury cites are inapposite. Woodbury's Cross-Mot. at 6, 8, 15, 17 (citing *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 328 (D.C. Cir 1999); *Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 88 (D.D.C. 2015); *Ctr. for Nat'l Sec. Studs. v. Dep.'t of Just.*, 215 F. Supp. 2d 94, 110 (D.D.C. 2002)). In *Valencia-Lucena*, the D.C. Circuit questioned the Coast Guard's search where the Coast Guard informed the requester that records may be contained at a location in Georgia but declined to search that location. *Valencia-Lucena*, 180 F.3d at 325, 327. In *Kleinert*, the District Court questioned the adequacy of the Bureau of Land Management's search for a host of reasons. *Kleinert*, 132 F. Supp. 3d at 87-89. As relevant here, the Court noted the absence of "several missing 'attachments'" to a report. *Id*. at 88-89. That report described certain declarations and documents as "attached." *Id*. at 89. Based on these and other deficiencies—using a misspelled search term and failing to sufficiently explain the search methodology—the court questioned the overall adequacy of the Bureau's search. In *Center for National Security Studies*, the district court found the Department's search inadequate where it searched three Department components and a document "clearly indicates the existence of earlier

relevant documents" that appeared to be located within another Department component that was not searched.  *Ctr. for Nat'l Sec. Studs.*, 215 F. Supp. 2d at 110.  Absent some specific indication that the agency's search missed specific, existing documents, the agency has no obligation to conduct follow-on searches.  *See Kowalczyk*, 73 F.3d at 389.

None of the examples Woodbury provides "contain[s] a lead so apparent that the Agency could not in good faith fail to pursue it." *Id*. (cleaned up).  Woodbury alleges "that the Tacoma Police Department shared their investigation reports of this incident with the FBI" but that "there is no evidence of any follow-up search actions by the FBI to locate" these records.  Woodbury Cross-Mot. at 16.  Woodbury's sole support for his allegation is paragraph 15 of his own declaration; but that paragraph makes no mention of the Tacoma Police Department sharing any information with the FBI.  It states, in its entirety: "Similarly, also on on [sic] page 4 of the attached Exhibit A records, there is a direct reference to an 'enclosed picture that was shared with FBI SABT.' *See* Ex. A at 4 (attached). However, the FBI did not undertake follow-up search actions to locate this additional responsive [sic] photograph."  Woodbury Cross-Mot. Ex. 3, Woodbury Decl. ¶ 15, ECF No. 27-3.  Woodbury points to nothing in the files he received from the FBI that suggests the FBI actually possessed any Tacoma Police Department records.  *See Bader Fam. Found.*, 630 F. Supp. 3d at 43.  Moreover, to the extent Woodbury seeks records indexed to Worwood outside of Woodbury's own tip to the FBI, the FBI already provided Woodbury with a response: the FBI can neither confirm nor deny the existence or non-existence of such records because Woodbury did not provide a signed release from Worwood.  Reply Ex. 1, 2d Seidel Decl. ¶ 13, ECF No. 28-1.  Ultimately, Woodbury received the sole responsive picture in the FBI's possession. *Id*. ¶ 12.

Woodbury also references an email indicating that ATF received reports from the Tacoma Police Department and alleges that ATF "failed to perform follow-up actions to locate and / or provide these additional responsive records." Woodbury Cross-Mot. at 7 (citing Dep't's Mot. Ex. 3 at 587, ECF No. 25-3). Not so. ATF's search located sixteen pages comprising Tacoma Police Department Incident Reports. Reply Ex. 3, Suppl. Decl. of Hirsh Kravitz ("Kravitz Supp. Decl.") ¶ 24, ECF No. 28-3. ATF properly withheld these records in full pursuant to FOIA Exemptions 6 and 7(C). *Id.* ¶ 27.

Woodbury's complaints about not receiving alleged FBI communications with ATF and the Tacoma Police Department are likewise misplaced. The document he references states that "[a]s a result of information shared by FBI" ATF and the Tacoma Police Department took certain law enforcement actions. Woodbury Cross-Mot. Ex. 3 at 12, ECF No. 27-3. In fact, Woodbury's own evidence shows that on December 8, 2015—two days before the December 10 e-mail Woodbury points to—the FBI "discussed" Woodbury's tip with an ATF Seattle Special Agent who "stated" that ATF "would further investigate the allegation." *Id.* Woodbury points to no indication that the FBI communicated directly with the Tacoma Police Department, as opposed to interfacing orally with its federal partners at ATF who in turn interacted with the Tacoma Police Department, nor does Woodbury offer any evidence that the FBI took any further action in the case, nor could he: "a search warrant was executed by the ATF and Tacoma Police Department." *Id.*; Reply Ex. 1, 2d Seidel Decl. ¶ 13, ECF No. 28-1. Moreover, the communications, if they exists, fall within the *Glomar* response Woodbury received and did not appeal. Ex. 1, 2d Seidel Decl. ¶ 5 n.1, ECF No. 28-1.

The ATF records Woodbury references reinforce this conclusion. He points to an email stating that ATF received a December 1 tip on the HQ TIP email address but only "[found] out

about it from FBI." Woodbury Cross-Mot. at 7 (citing ECF No. 25-3 at 616). Closer examination of that document shows that Woodbury already has the referenced records. That document includes Woodbury's December 1, 2015, message to "atftips@atf.gov" email address; the December 9, 2015, communication in which Woodbury forwarded that email to ATF; and then internal communication within ATF expressing questions about how the December 1 email from Woodbury had not yet been acted upon. Dep't's Mot. Ex. 3 at 616-17, ECF No. 25-3. The FBI was not privy to these communications. Reply Ex. 3, Kravitz Suppl. Decl. ¶ 31, ECF No. 28-3. Woodbury points to no evidence in the record indicating that the communication between ATF and the FBI was in writing such that a record ever existed, let alone that it existed at the time of the search. *See Aguiar*, 865 F.3d at 733. And even if such writing existed, its absence does not, by itself, render ATF's search inadequate, for "particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde*, 315 F.3d at 315.

Woodbury also does not identify any system that either agency omitted to search, or that records identified during the initial searches suggest should be searched. *See Valencia-Lucena*, 180 F.3d at 325, 327. Woodbury, instead, points to a notation of the possibility of a "follow-up interview." Woodbury's Cross-Mot. at 7. There is no evidence that such interview occurred, or that, if it occurred, it was documented. Moreover, ATF searched its N-Force database—the online database housing records related to ATF's criminal investigations—and retrieved "the complete investigatory file." Dep't's Mot. Ex. 1, Kravitz Decl. ¶¶ 13-14, ECF No. 25-1. That online database houses records related to criminal investigations conducted by ATF. *Id.* ¶ 13. There are no other locations or databases likely to contain responsive records, *id.* ¶ 17, which makes sense, as the agency uses N-Force for its own criminal investigatory purposes, and for the database to be

useful it must actually house such records.  It is therefore no surprise that, when the Seattle Field

Division likewise searched N-Force, it found "no additional records" in the database.  *Id.* ¶ 16.

The Seattle Field Division provided the entire physical case file (consisting of seventeen pages),

which was then paired with the sixteen pages of N-Force results to create the thirty-three-page

response provided to Woodbury.  *Id.*

       Simply put, the Agencies provided "detailed and non-conclusory affidavits," which are

"accorded a presumption of good faith," and "cannot be rebutted by [Woodbury's] purely

speculative claims about the existence and discoverability of other documents."  *Taylor Energy*

*Co. LLC*, 271 F. Supp. 3d at 88-89 (internal quotations omitted).  Woodbury points to no

documents that "contain[s] a lead so apparent that the Agency could not in good faith fail to pursue

it."  *Kowalczyk*, 73 F.3d at 389 (cleaned up).  Woodbury has failed to produce any "countervailing

evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the search."

*Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (citing *Morley v. CIA*,

508 F.3d 1108, 1116 (D.C. Cir. 2007)).  In short, the Agencies' searches were adequate.

## III.    ATF's Segregability Analysis Was Proper.

       Woodbury challenges ATF's segregability analysis.  Woodbury's Cross-Mot. at 8-11.  He

only argues that he did not receive "segregable portions of any Tacoma Police Reports."  *Id*. at 9-

10.  He asserts that withholding the identity of a local government agency is unjustified under

FOIA Exemptions 6 and 7(C) because the police department has no privacy interest.  *Id*. at 10.

But ATF did not assert a privacy interest for the police department itself.  Dep't's Mot. at 14-22.

Rather, ATF is chiefly concerned with protecting the privacy of third parties mentioned in

investigatory files, including the privacy of an individual subject to the investigation and that of

law enforcement personnel.  *Id*.  Woodbury does not challenge that those records are categorically

exempt from disclosure.  *See Reps. Comm.*, 489 U.S. at 780; *Schrecker*, 349 F.3d at 661.

Moreover, Woodbury does not even attempt "to articulate a public interest sufficient to outweigh an individual's privacy interest[.]"  *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008).

Here, ATF withheld in full sixteen pages comprising Tacoma Police Department Incident Reports.  Reply Ex. 3, Kravitz Supp. Decl. ¶¶ 24, ECF No. 28-3.  ATF asserted Exemptions 6 and 7(C) because the reports concern the personal information of third parties, including the subject of the investigation, law enforcement personnel, and witnesses.  *Id*.  Withheld information includes name, address, phone number, social security number, physical identifiers, employment history, driver license information, and criminal history.  *Id*. ¶ 26.  Disclosure of these records would impermissibly reveal the identities and personal information of law enforcement personnel.  *Id*. ¶ 27.  It also would reveal the identities and personal information of witnesses.  *Id*. ¶ 28.  Moreover, ATF's line-by-line segregability review could not identify any meaningful, non-exempt information that could be released without harming these interests.  *Id*. ¶ 29.  Critically, these records provide personal details of a third party and are categorically exempt from disclosure.  *Id*. ¶¶ 26, 29; *see also Reps. Comm.*, 489 U.S. at 780; *Schrecker*, 349 F.3d at 661.  ATF's segregability analysis was proper because its supplemental declaration "adequately describes each withheld document and the exemption under which it was withheld" and attests "that the agency released all segregable material."  *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 207 (D.D.C. 2013).

Woodbury asks that the Court conduct in camera review of the files ATF withheld in full.  Woodbury's Cross-Mot. at 10.  In camera review "may be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency," where "the number of withheld documents" is particularly high, or "when the dispute turns on the contents of the withheld

documents, and not the parties' interpretations of those documents[.]" *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). This Court has denied requests for in camera review where "the government has provided detailed affidavits that demonstrate the adequacy of its search and [the requester] has not overcome the government's presumption of good faith[.]" *Hillier v. Dep't of Homeland Sec.*, Civ. A. No. 16-1836 (DLF), 2019 WL 4737066, at *4 (D.D.C. Sep. 27, 2019); *see also Schneider v. Dep't of Just.*, Civ. A. No. 18-0474 (DLF), 2019 WL 4737059, at *6 (D.D.C. Sep. 28, 2019) (declining to review documents in camera where the government provided sufficient declarations and there was no evidence of bad faith); *Lewis v. Dep't of the Treasury*, Civ. A. No. 17-0943 (DLF), 2020 WL 1667656, at *9 (D.D.C. Apr. 3, 2020) (same). In camera review is often unnecessary, and generally is not "a wise use of increasingly burdened judicial resources[.]" *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 262 (D.C. Cir. 1977).

Here, Woodbury does not question or dispute the sufficiency of the declarations. Moreover, ATF's supplemental declaration describes all fifty-three pages withheld in full, including the Tacoma Police Department reports. Reply Ex. 3, Kravitz Supp. Decl. ¶¶ 24-29, ECF No. 28-3. Nor does Woodbury allege that ATF acted in bad faith. The parties do not dispute the contents of the records. In fact, Woodbury does not even challenge the ATF's withholdings other than the withholding in full of the Tacoma Police Department reports. ATF has described in detail the reasons for withholding those records. While "[t]he decision to conduct an in camera review is committed to the broad discretion of the trial court judge," Woodbury has provided nothing to justify the "onerous burden" that would be "imposed upon the trial court" from conducting in camera review. *Quinon*, 86 F.3d at 1227. The Court should deny Woodbury's request for in camera review because ATF's withholding of the Tacoma Police Department records was proper and no reasonably segregable information could be released.

**IV.**    <u>**ATF's Referral of Records to the Army Did Not Constitute Improper Withholding.**</u>

Woodbury challenges ATF's referral of twenty-seven pages to the Department of the Army for direct response to him.  Woodbury's Cross-Mot. at 11-12.  He alleges that ATF did "not provide[] any explanation to [Woodbury [] or to this Court] for its reasons in shipping those responsive records to the Army."  *Id*. at 12.  Relying on the D.C. Circuit's decision in *Sussman v. Marshals Service*, 494 F.3d 1106, 1118 (D.C. Cir. 2007), Woodbury concludes that "ATF's referral and delegation actions of these records constitutes an unlawful withholding of responsive records[.]"  Woodbury's Cross-Mot. at 12 (citing *Sussman*, 494 F.3d at 1118).

Referral of records from one agency to another for direct response to a requester "is contemplated under the FOIA."  *Lewis v. Dep't of Just.*, 733 F. Supp. 2d 97, 102 n.3 (D.D.C. 2010) (citing 5 U.S.C. § 552(a)(6)(B)(iii)(III)).  The Court may evaluate "the legality of an agency's referral procedures" by evaluating three "non-binding" guideposts: "(1) whether the originating agency demonstrated an intent to control the records at issue; (2) whether the referral was prompt and public; and (3) considering the burden that the referral procedure places on the requestor, including whether he would be required to file a separate FOIA request to the originating agency." *UNROW Hum. Rts. Impact Litig. Clinic v. Dep't of State*, 134 F. Supp. 3d 263, 280 (D.D.C. 2015) (citing *McGehee v. CIA*, 697 F.2d 1095, 1111 (D.C. Cir. 1983); *see also Judge Rotenberg Ed. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 59 n.3 (D.D.C. 2019) (noting that the referral's net effect should not be "to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them").  In *UNROW*, the district court determined that referral was proper where "DIA processed Plaintiff's FOIA request, determined that the responsive document originated with State, referred the document to State for its disclosure determination, and communicated each of these facts to UNROW." *UNROW*, 134 F. Supp. 3d at 280.  The court noted that "DIA fully satisfied the non-binding McGehee sample procedure when it promptly

informed UNROW in a public letter that the responsive document originated with State and that State retained authority over the document, and then promptly referred the document to State for disclosure determination." *Id*. at 281.

*Sussman*, upon which Plaintiff relies, in fact supports the propriety of the referral here at issue.   In *Sussman*, the Marshals Service referred documents to several agencies "that had originally produced them," including the Postal Service.  *Sussman*, 494 F.3d at 1110-11.   The Postal Service responded to the requester directly; the Marshals Service did not take further action related to those documents.  *Id*. at 1111.   The D.C. Circuit affirmed the denial of summary judgment to the requester because "the agency may acquit itself through a referral, provided the referral does not lead to improper withholding[.]"  *Id*. at 1118 (citing *Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175–76 (D.C. Cir. 1998)).   The Court of Appeals rejected the requestor's contention that referrals are impermissible, and instead deemed them to be a "reasonable procedure[.]" *Id.*

Similarly here, on July 12, 2023, ATF notified Woodbury's counsel that ATF "obtained [twenty-seven] pages of documents belonging to another agency" and that ATF "forwarded the [twenty-seven] pages to the Department of the Army [] for a direct response[.]"  ECF No. 25-3 at 644.   That same letter listed the office's name, address, and e-mail.  *Id*.   ATF processed Woodbury's request, "determined that the responsive document originated with [the Army], referred the document to [the Army] for its disclosure determination, and communicated each of these facts to [Woodbury]."  *Unrow*, 134 F. Supp. 3d at 280.   ATF need not do anything else.  *Id*. at 281.

Perhaps an indication of the degree of Woodbury's actual interest in receiving the records, he does not allege that he ever followed up with the Army office to request a status update. *See*

Woodbury's Cross-Mot. at 12 ("Plaintiff has not received any follow-up communications or response from either the ATF or from the Army regarding this delegation / referral of responsive records."). In any event, on August 19, 2024, the Department of the Army Criminal Investigation Division responded directly to Woodbury. Reply Ex. 5, Army Criminal Investigation Division Response (Aug. 19, 2024), ECF No. 28-5. The Criminal Investigation Division withheld in full two pages, *id.* at 3, released in part sixteen pages, *id.* at 4-18, 21, released one page, *id.* at 20, and referred six pages to Joint Base Lewis-McChord in Washington State, *id.* at 19. The Criminal Investigation Division notified Woodbury that it withheld information pursuant to FOIA Exemptions 3, 5, 6, and 7(C). *Id.* at 1. Therefore, Woodbury has received at least a substantial portion of the twenty-seven pages ATF referred to the Army for direct response. Woodbury's "argument against [ATF's] referral[] fails" and "the current record contains insufficient evidence to establish improper withholding under *McGehee*[.]" *Sussman*, 494 F.3d at 1118.

Finally, Woodbury claims that "ATF has not provided any explanation to Plaintiff (or to this Court) for its reasons in shipping those responsive records to the Army." Woodbury's Cross-Mot. at 12. ATF only needed to disclose to Woodbury that it referred the records to the Department of the Army, not why it did so. *UNROW*, 134 F. Supp. 3d at 280 (listing the criteria for evaluating the legality of a referral to another agency). ATF did so by letter dated July 12, 2023. Dep't's Mot. Ex. 25-3 at 644. That letter provided the reason for doing so: the twenty-seven pages "belong[] to another agency." *Id.* In short, ATF's referral of these records does not constitute an improper withholding under FOIA.

*       *       *

## CONCLUSION

For these reasons and the reasons discussed in the Department's motion for summary judgment, the Department respectfully requests that the Court grant the Department's motion, deny Woodbury's cross-motion for summary judgment, and enter judgment for the Department.

Dated: August 30, 2024    Respectfully submitted,

          MATTHEW M. GRAVES, D.C. Bar #481052
          United States Attorney

          BRIAN P. HUDAK
          Chief, Civil Division


          By: _____ /s/ *Dimitar P. Georgiev* _____
            DIMITAR P. GEORGIEV, D.C. Bar #1735756
            Assistant United States Attorney
            601 D Street, NW
            Washington, DC 20530
            (202) 815-8654

          *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTIN WOODBURY,

        Plaintiff,

      v.

DEPARTMENT OF JUSTICE,

        Defendant.

Civil Action No. 21-3384 (DLF)

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendant's motion for summary judgment, Plaintiff's cross-motion for summary judgment, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED; it is further

ORDERED that Plaintiff's cross-motion is DENIED; and it is further

ORDERED that judgment is ENTERED in favor of Defendant.

SO ORDERED:

_____
Date

_____
DABNEY L. FRIEDRICH
United States District Judge